CHILD (DAVIS v.). See Case No. 3,628.

CHILD (FILLEY v.). See Case No. 4,787.

## Case No. 2,676.

### The CHILDE HAROLD.

[Olc. 275.] [1]

District Court, S. D. New York. Feb., 1846.

EXTRA SEAMEN'S WAGES FOR SHORT ALLOWANCE —BURDEN OF PROOF.

1. Extra or double wages are given seamen when put on short allowances of provisions or water on a voyage, only in case the quantity required by law is not supplied the ship by her master or owner.

2. If the ship has a proper supply laden on board, and the crew is insufficiently furnished on the voyage, their remedy is by action for the particular wrong, and not for double wages.

3. All the crew may unite in a suit for double wages because of a short allowance of bread, and each is a competent witness for his fellows.

4. It devolves upon the libellants, in such action, to prove both that a short allowance was served them, and that the vessel had an insufficient supply laden on board.

[Cited in The John L. Dimmick, Case No. 7,355.]

5. If they fail in maintaining their action, and it appears there was no colorable cause for bringing it, they will be charged with full costs of suit.

6. When one of the libellants unites a demand for contract wages unpaid him with his claim for short allowance, and obtains a decree for those wages, the court will only allow him proportionate costs against the vessel on that demand, not including witnesses fees to his co-libellants, and will order full costs against him in connection with his co-libellants upon the other branch of the litigation.

The libellant, Duffie, sues to recover wages on a voyage from New-York to Callao and back, and he, with his five associates, also claim the equivalent of their contract-wages for a period of six months and a half, because, as they charge, they "were on a short allowance of good and wholesome ship-bread," the "master having neglected to put on board the requisite quantity of provisions for the said voyage, according to the act of congress," &c. The answer denies these allegations, and asserts that the vessel was supplied with a sufficient quantity of good and wholesome bread for the voyage. It avers, also, that all the libellants, except Duffie, were paid the wages claimed by them, in full, on the arrival of the vessel at this port, and that at the same time Duffie's wages were offered to him, which he refused to accept. The answer denies that he is entitled to enforce the payment of wages, because of his mutinous and insubordinate conduct on the homeward voyage, having refused to obey the orders of the master to assist at sea in repairing damages the vessel had received in a gale, which had placed her in a crippled and unseaworthy state, and that on the voyage homeward he accosted the master in rude and insulting language, seized hold of him, and threw him down, and held him confined on the deck, until he was relieved by his officers, &c.

E. Burr, for libellants.

F. B. Cutting, for claimant.

BETTS, District Judge. The provision in the act of congress of July 20, 1790, section 9 [1 Stat. 135], upon which the contestation for short allowance is founded, is this: "Every vessel bound across the Atlantic ocean shall, at the time of leaving the last port from which she sails, have on board, well secured under deck, at least one hundred pounds of wholesome ship-bread for every person on board, and in like proportions for longer or shorter voyages; and in case the crew of any vessel, not so provided, shall be

---

[1] [Reported by Edward R. Olcott, Esq.]

put upon short allowance of bread during the voyage, the master or owner shall pay to each of the crew one day's wages beyond the wages agreed on for every day he shall be so put on short allowance, to be recovered in the same manner as his stipulated wages." The crew claim double wages in this action, because a sufficient allowance of good and wholesome bread was not served out to them during the voyage, and each of the libellants made a witness for his co-libellant, testified to the bad and unwholesome quality of the bread, and all concurred in saying, that after six weeks out to the completion of the outward and return voyage, the bread served the men was mouldy, rotten, filled with maggots and vermin, and when put in tea, the worms were skimmed off in spoonsful, and that it also stunk. Kelly, one of the men, and not a libellant, gave in substance the same representation. On his cross-examination, every witness stated that there was no short allowance of quantity, and most of them also said, the vessel sold from her stores of bread on the coast of South America, and brought back several barrels and three hogsheads of bread laden on board before the voyage began, and which had not been opened.

The question is raised by the claimants upon this state of facts, whether the libellants bring their case within the provisions of the act of congress. The statute is plainly intended to compel owners and masters to fit out vessels with a sufficiency of wholesome provisions for the voyage. and its direct language does not extend beyond that requirement. Mariners v. The Washington [Case No. 9,086]. No regulation is made respecting the distribution of bad provisions or short allowances, whilst the ship is supplied with good, or enough in quantity. Parties wronged, by being furnished at sea insufficient or improper provisions or water, are left to their legal remedies, as in other cases of maltreatment, not provided for by statute. Feeding a crew on unwholesome or spoiled provisions would justify their leaving the ship, and such neglect or malfeasance of the owner would subject him, at the least, to pay full wages for the voyage. 1 Hagg. Adm. 59; Id. 186; 1 Pet. Adm. 255, and note [Swift v. The Happy Return, Case No. 13,697]; 2 Pet. Adm. 411 [Dixon v. The Cyrus, Case No. 3,930]. The construction of the clause in this court has been, that the seamen must resort to their special action for damages against the master for giving them insufficient or improper food, whilst the ship had on board enough of good quality; and if the master proved his original supply had been sufficient, but it spoiled or was destroyed on the voyage, that he was still liable to the action, if he neglected to procure, when within his power, an adequate supply. This interpretation of the statute, and the rights of seamen in respect to their supplies of food on shipboard, I am inclined to maintain. I am per-

suaded seamen will be more thoroughly protected by such exposure of owners and masters to special damages, than if they may be exonerated by payment of this specific penalty for wrongs which must often demand a recompense more punitive and compensatory than a duplication of wages. The statute gives the right to double wages in case the crew of a vessel, not provided with the quantity of provisions specified, shall be put on short allowance; and manifestly the statutory right and cause of action does not arise when in fact the vessel commenced her voyage with the quantity of provisions on board demanded by the statute. The Mary [Id. 9,191]. Congress did not assume to regulate the provisioning of a crew further than regards the amount to be supplied on board for their support. The pleadings in suits for short allowances are framed in consonance with this understanding of the act. So, in this case, the libellants allege the master neglected to put on board the requisite quantity of provisions for the voyage, according to the act of congress. This allegation is the gravamen of the complaint, and the proofs and the recovery must be governed by it. The action is not to be maintained, then, upon the fact alone, that a crew is put on short allowance; the additional particular is equally an essential ingredient, that the ship had not on board the stores required by law when she sailed on the voyage.

It is contended by the libellants, that as they prove bread of a bad and unwholesome quality was served out, and they were not allowed a just ratio of that which was good and wholesome, that the burthen of proof is cast on the claimants to show the vessel properly stored on her departure. In ordinary acceptation, a party prosecuting is bound to prove on his part every fact necessary to the support of his action; so that when his right of action rests upon several facts and averments, it is indispensable that he furnish evidence of the existence of each. 1 Chit. 216–256. Moreover, it is a rule of evidence, when an issue involves a charge of culpable omission, it is incumbent on the party making the charge to prove it, although the proposition be a negative one, for the other party shall be presumed to be innocent of the imputation until he is proved to be faulty. Hartwell v. Root, 19 Johns. 345; 3 East, 192; Rosc. N. P. Ev. 52. The proofs, perhaps, need not be equally direct and cogent in respect to each particular, when two or more are the basis of the action, for the existence of one may be in some degree implied from that of another; as if the proof be satisfactory, that immediately on the commencement of a voyage the crew are put upon a close short allowance, and so kept habitually during the continuance of the voyage, very slight evidence of the insufficiency of the supply of provisions on board will cast on the owner the burthen of proving he had fully complied with the law.

I do not say the same implication might not arise respecting the fitness of the provisions, where those served were uniformly bad, although the evidence on the part of the libellants was limited to proving the quality of the rations, if there was any reliable evidence showing carelessness or fault in the selection and lading of the provisions put in the ship. But the rule ought not to extend to requiring the owner to give evidence of the quantity and quality of provisions stored on board, when the testimony of the libellants show, there was an abundant supply in the ship, and only accuses it inferential y of being unwholesome in quality when shipped.

Upon all the testimony submitted by the libellants in this case, I do not think even a presumption is raised that the provisions on board were deficient in quantity, which the claimants can be called upon to repel, by proving they furnished the vessel in the outset sufficiently. The whole contestation has proceeded upon the question of the wholesomeness of the bread served the men. If this point should be decided in their favor, there would be no semblance of right in them to recover the double wages demanded under the statute, without the further fact is found by the court, that the bread was not wholesome when put on board. These positions of law must control the case, and be fatal to the suit of the libellants upon their own evidence. But the testimony of Captain Dean and the mate Forsyth, respecting the quality of the bread remaining over from the previous voyage, and of the large excess brought back on this, and of Mr. Taylor, who furnished the supply for the voyage in question, proves, beyond any fair ground for doubt, that the bread was abundant in quantity and wholesome, and of a good quality when put on board and the ship went to sea. These facts would be decisive of the present action. But I feel constrained to say, that I am satisfied upon the whole proofs that the representation of the men as to the condition of the bread during the voyage is a sheer fabrication; that it is all grounded upon their receiving occasionally biscuits taken from some barrels which had been wet on the outside, and were approaching to mould, whilst the main body of the bread in the same barrels was sound and wholesome, and is found so now after the completion of the voyage, and the return of the bread to this port. It seems to me evident that this claim for short allowance was fabricated in aid of Duffie's suit for wages, and was not thought of by any of the crew when the vessel came in and had completed her voyage. All, except Duffie, received their wages when discharged, and intimated no claim of this character, or even complaint as to their fare on the voyage, and Duffie declined taking his wages with the others, threatening to sue the master for an assault and battery, without suggesting any demand against the ship or owners for short allowance. Afterwards he changed his mind, and wished to receive his wages. His counsel wrote the master they held his account for wages, and asked payment of the amount, without the coupling any demand for short allowance with it; and the owners not being willing to satisfy his demand, because of insubordination on the voyage and maltreatment of the master with which he was charged, this action was brought to recover his contract wages, and in the same suit his shipmates became joint parties with him, in a claim of extra wages for six and a half months' short allowance. A demand put in prosecution under such circumstances would, at all times, be looked at with great distrust. I do not say acceptance of the stipulated wages, and giving receipts therefor, would legally bar the crew from setting up afterwards a claim for short allowance; but such claim interposed subsequently must necessarily be subject to severe and jealous scrutiny, and when supported almost entirely by the oaths of the prosecuting parties, each swearing for his companions, and all expecting to recover upon facts mutually proved for each other, a court would exact a strong and most satisfactory case before making a decree in its favor.

The case, so obnoxious to suspicion and doubt on its face, is further met by evidence on the part of the owners, satisfactorily showing that the main representations on the part of the libellants in their testimony are unfounded in fact, or gross and wilful exaggerations as to the state and quality of the bread; and accordingly, on this branch of the case, I unhesitatingly decree against the libellants, with costs.

The remaining question respects the right of Duffie to wages. The pleadings and proofs in objection to this demand exhibit a case of gross insubordination and misconduct and violence on his part, which would justify a punishment equivalent to a forfeiture of wages, if the master or owners stood in a situation allowing them to make this defence. Considering the allegations of the answer fully proved, still it appears to me the master has remitted or pardoned the offence, if not entirely, certainly to that degree that he would not be allowed to plead the transaction as a bar to wages. Duffie was the best and most efficient hand on board. His conduct had been unexceptionable to the time of the disorderly and mutinous affray complained of. The master did not arrest and confine the offender, or subject him to the discipline of the ship for insubordination or misconduct, nor did he give Duffie to understand his offence would not be overlooked, or that he would be called to answer for it on the arrival of the ship at a home port; neither did he make it the subject of complaint to the civil authorities, or even to his owners when the voyage was ended. On the contrary, the

very day, and within a few hours after his misconduct, Duffie resumed his work as usual, doing his duty faithfully and quietly, and so continued at his place during the voyage, without reprimand or question on the part of the master. When the crew were discharged, the master procured the money for Duffie and offered him his wages in full, but Duffie refused to accept them, saying, he intended to sue the master for an assault and battery in the affray complained of. The master testified, in explanation of his proceedings, that he had intended accompanying the payment of wages with a suitable reproof, but he did not administer it, because Duffie declined taking his pay. On the same day, Duffie relented and called on the master, and asked to be paid his wages. The master then refused to pay them, and charged that they had been forfeited. The same afternoon, as the master was about leaving the city, he received a note from Duffie's proctors, requesting payment of the wages. He made no objection to the demand, and handed the note to the owners, who agreed to see to the matter for him. They subsequently refused to make the payment, but it is not proved that this was done at the request or with the approval of the master. I think, under these circumstances, it was too late for the master or owners to revert to the offence committed a month before, as working a forfeiture of wages for the voyage, or urge it to the court as a ground of punishment by way of mulct or abatement of wages. I shall accordingly decree wages to Duffie. If the amount demanded by him is not agreed to by the claimants, a reference must be had to a commissioner to ascertain the sum due.

There is a difficulty in disposing of the question of costs on this branch of the case. The court has arrived at the conclusion that the claimants could not properly contest the payment of wages with Duffie, after the open and continued acts of the master, by implication, at least, condoning his offence on the voyage. They ought not to be allowed, in gratification of their own resentments, to create a litigation on that point, with impunity from costs, knowing that the master had overlooked or condoned the misconduct of the seaman. On the other hand, it is manifestly inequitable that this libellant, who, in conjunction with his associates, has forced the owners to an expensive litigation upon the groundless claim for short allowance, should have the advantage of throwing on them the costs of the whole controversy, by now recovering against them full costs, with his wages. All the taxable costs, or nearly so, must necessarily have been incurred in the suit for short allowance, without the adjunct of this demand. The owners, finding this tacked to those unfounded claims, might have been induced to make defence to the demand of wages by Duffie, when if the action rested on that alone,

they would have satisfied it without contestation. The costs decreed against the joint libellants on the claim for short allowance would not be an adequate redress to the claimants, because, if Duffie is allowed to tax full costs on this branch of the case, he imposes on them a large portion of the very costs they are exempted from by the decree in their favor. For instance, they should be discharged of the marshal's fees on arrest, and keeping of the vessel, all disbursements made in bonding her, and various other particulars entering into the charges of the proctors, clerk and marshal, as well as all expenses for the attendance of witnesses, no witness being called to Duffie's demand for wages, who was not also used to prove the short allowance sued for.

I shall, in view of the whole case, and in the exercise of the discretion the court possesses in the allotment of costs, order that a separate bill of costs be made up in favor of Duffie, and that the claimants be chargeable only with those services specially and necessarily applicable to his demand for wages; and that he be entitled to recover only one-sixth of the charges of the marshal and clerk on the arrest, bonding and discharge of the vessel, and only for the attendance of Kelly as a witness, the other witnesses being all parties to the suit, and not entitled to fees as against him. A decree will be entered conformably to these directions.